## STATE OF CONNECTICUT *v.* JAVIER SANTOS
### (AC 27920)

Flynn, C. J., and Robinson and McDonald, Js.

Argued February 5—officially released June 3, 2008

*Elio C. Morgan*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Brian Preleski*, senior assistant state's attorney, for the appellee (state).

FLYNN, C. J. The defendant, Javier Santos, appeals from the judgment of the trial court revoking his probation and reinstating six years of the unexecuted portion of his previous sentence. On appeal, the defendant claims that (1) there was insufficient evidence that he violated his probation by committing sexual assault in the first and second degrees and (2) he was denied due process of law because (a) the revocation of probation hearing and the arrest warrant application did not provide sufficient notice of the specific incidents of the alleged violations of probation for failure to report to his probation officer and (b) there was an unreasonable preaccusation delay in charging him with a violation of probation for failing to report. We affirm the judgment of the trial court.

The following procedural history is relevant to our resolution of the defendant's claims on appeal. On August 17, 1995, the defendant was convicted of robbery in the first degree and was sentenced to twelve years imprisonment, execution suspended after five years, and five years probation. The defendant's probation commenced on June 5, 2000, after he was released from prison. On that date, the defendant signed a conditions of probation form, which contained ten standard conditions of probation as well as several court-ordered special conditions. On April 12, 2005, the defendant was arrested and charged with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), and thereafter the information was amended to include a charge of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3). On May 10, 2005, Jodie Ward, from the office of adult probation, applied for a warrant for the defendant's arrest for violating his probation. Ward averred that the defendant was in violation of two of the standard conditions of his probation, one, that he not violate any criminal

law and, two, that he report to his probation officer as directed.

The defendant's trial on the sexual assault charges and his hearing on the violation of probation were held simultaneously, with additional evidence being allowed on the violation of probation charge after the jury returned its verdict. The jury found the defendant not guilty of the sexual assault charges, using the criminal standard of proof of beyond a reasonable doubt. The court, however, found the defendant to be in violation of the conditions of his probation by using the lesser standard of proof of a preponderance of the evidence. The court revoked the defendant's probation and ordered him to serve six years of the unexecuted portion of his prior sentence. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that there was insufficient evidence that he violated his probation by committing sexual assault in the first and second degrees. Initially, he challenges the court's conclusion that the evidence was sufficient to establish that he committed sexual assault in the first degree. He then challenges the court's conclusion that the evidence was sufficient to establish that he committed sexual assault in the second degree. We do not agree with either challenge.

"[E]vidence is not insufficient [merely] because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Gauthier*,

73 Conn. App. 781, 787, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003).

"A challenge to the sufficiency of the evidence is based on the court's factual findings. The proper standard of review is whether the court's findings were clearly erroneous based on the evidence. . . . A court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficient evidence when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 80–81, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). "[A] trial court may not find a violation of probation unless it finds that the predicate facts underlying the violation have been established by a preponderance of the evidence at the hearing—that is, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence." (Internal quotation marks omitted.) *State* v. *McElveen*, 69 Conn. App. 202, 205, 797 A.2d 534 (2002).

The following facts, as found by the court, are relevant to our consideration of the defendant's claims. On the evening of March 19, 2004, "[The victim left] Tracy's [bar in Bristol] and [went] to Sabino's parking lot with [her friend]. At that location, the defendant . . . arrive[d]—a person [with whom the victim had] been acquainted . . . for a long period of time, including past experiences of consensual sexual relations. [The victim] approache[d] the defendant. There [was a] discussion concerning a ride home for [her friend]. The

defendant agree[d]. . . . [A]fter dropping off [the friend] the defendant [drove] to his tractor-trailer . . . which he [was] moving . . . to the Friendly's [restaurant] parking lot. They entered the cab of the truck, and [the victim] indicate[d] that she [didn't] feel well; [she then lay] on the sleeping area of the cab. . . .

"[The victim] indicated that she had drank too much. . . . She pass[ed] out, fall[ing] asleep in the cab. . . . [L]ater, [she awoke] with the defendant on top of her, [his] penis in her vagina [and] her shoes and pants removed. She told him to stop [and that] it hurt. He didn't stop. She tried to kick him [and to] push him away, with no result. He pinned her down with his shoulders. She told him she was going to be sick. She was not sure if he ejaculated in her. . . . [A]fter the incident, he gave her a ride home. She was crying." The court also found that the victim went to a hospital, where a rape kit examination was conducted, which revealed that the defendant had ejaculated inside of the victim's vagina.

On the basis of these specific facts, the court found, by a preponderance of the evidence, that the defendant had violated the terms of his probation by committing sexual assault in both the first and second degrees.

## A

The defendant claims that there was insufficient evidence to support the court's conclusion that he "violated [his probation] by committing the crime of first degree sexual assault because the facts as found by the court [did] not establish by a preponderance of the evidence that [he] compelled the alleged victim to engage in sexual intercourse by the use or threat of use of force and that the force was . . . such to cause the alleged victim to fear physical injury." The defendant argues that even if the court accepted the victim's version of events that "when the act started . . . she woke

up and resisted . . . [i]n the world of reasonable logic, the strength and will to resist the use of force or the threat of use of force is inconsistent with the state of fear of physical injury that could result from such resistance. The plain language of the statute contemplates a victim that is so overcome by force or the threat thereof that it generates in her such fear of physical injury that [she] succumb[s] to the desires of her assailant against her will." This argument is without merit.

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ." The defendant's argument that if a victim resists a sexual assault, the victim, necessarily, is not in a state of fear of physical injury is lacking in support both logically and legally. A clear and simple example of a victim fighting back while in fear of physical injury can be found in cases of self-defense, in which fear for one's own safety relieves criminal responsibility for fighting off one's attacker. Certainly, fear for personal safety and resistance to an attack are both present in such cases. We read nothing in § 53a-70 that would lead us to the conclusion that it requires that a victim's fear be of the type that would make her "succumb to the desires of her assailant against her will" without fighting back. The argument merits no further discussion.

The defendant also argues that § 53a-70 requires (1) compulsion by the use of force or the threat of force *and* (2) fear of physical injury. We do not agree. The clear language of § 53a-70 (a) requires that a victim engage in sexual intercourse with an assailant due to

(1) compulsion by the use of force *or* (2) compulsion by the threat of force and fear of physical injury.

In this case, the court found that the victim passed out in the defendant's truck and that she awoke "with the defendant on top of her, [his] penis in her vagina [and] her shoes and pants removed. She told him to stop [and that] it hurt. He didn't stop. She tried to kick him [and to] push him away, with no result. He pinned her down with his shoulders." The court further found, by a preponderance of the evidence, that "the defendant did compel another person to engage in sexual intercourse with him by the use of force against her . . . ." After reviewing the record, we conclude that the trial court's finding that the state had proven, by a preponderance of the evidence, that the defendant had committed sexual assault in the first degree and thereby violated his probation was not clearly erroneous and was supported by the evidence.

B

The defendant claims that when viewing "[t]he evidence . . . as a whole [along with] the reasonable and logical inferences to be drawn from the testimonies and conduct of the parties, it cannot be said that there exists a preponderance of evidence to support a conclusion that the defendant committed second degree sexual assault. It is equally likely that the sexual intercourse was consensual." The defendant also alleges that the court gave too much weight to the constancy of accusation witnesses, stating that he "does not challenge the court's assignment of credibility as to the testimonies of those witnesses but questions the proper weight that should be accorded to them." We are not persuaded.

Section 6-11 (c) of the Connecticut Code of Evidence, provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided

the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

Although the court stated that it "found [the victim's] testimony more credible because of the constancy of accusation witnesses," there is nothing in the record that would lead us to the conclusion that this statement meant anything more than the court found the testimony of these witnesses to be corroborative of the victim's testimony, which lent more credibility to her version of events. In making this statement, the court also explained that it "followed [the] law" related to constancy of accusation witnesses and the use of their testimony. We can discern nothing in the record that would lead us to the conclusion that the court used the testimony of these witnesses for any purpose beyond that which is permitted.

The defendant testified that the sexual encounter between him and the victim was consensual. The victim testified that it was not consensual. The court found the victim to be more credible than the defendant. "The credibility of witnesses is a matter to be resolved solely by the [trier of fact]." (Internal quotation marks omitted.) *State* v. *White*, 229 Conn. 125, 143, 640 A.2d 572 (1994). "[W]e must defer to the [trier's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) Id.

The court specifically found that the victim had passed out in the defendant's truck and that when she awoke, the defendant was on top of her, her shoes and

pants had been removed, and the defendant's penis was inside of her vagina. One manner of violating § 53a-71 (a) (3)[1] is by engaging in sexual intercourse with another person who is unconscious. The court's finding, made after its assessment of the credibility of the witnesses, that the state had proven, by a preponderance of the evidence, that the defendant had committed sexual assault in the second degree and thereby violated his probation was not clearly erroneous and was supported by the evidence.

## II

Although the defendant does not dispute that he failed to report to his probation officer as directed, he, nevertheless, claims that his right to due process was violated because (1) the revocation of probation hearing and the arrest warrant application did not provide sufficient notice of the specific incidents of the alleged violations of probation for failure to report and (2) there was an unreasonable preaccusation delay in charging him with a violation of probation for failing to report.[2] We do not agree.

"[T]he due process clause of the fourteenth amendment to the United States constitution requires that certain minimum procedural safeguards be observed in

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (3) such other person is physically helpless . . . ." General Statutes § 53a-65 (6) defines "physically helpless" to mean a person who is "unconscious or for any other reason is physically unable to communicate unwillingness to an act."

[2] We note that in response to a specific inquiry by Justice McDonald during oral argument before this court, the defendant's appellate counsel specifically stated that he was not making a *Strickland* argument. See *State v. Strickland*, 42 Conn. App. 768, 773–74, 682 A.2d 521 (1996) ("[T]he court may modify or enlarge a defendant's conditions of probation. . . . This power is not given to the office of adult probation." [Citation omitted; internal quotation marks omitted.]), rev'd on other grounds, 243 Conn. 339, 703 A.2d 109 (1997).

the process of revoking the conditional liberty created by probation. . . . In this regard . . . [w]here noncriminal activity forms the basis for the revocation of probation . . . due process mandates that the [probationer] cannot be subject[ed] to a forfeiture of his liberty for those acts unless he is given prior fair warning. . . . [A]ssertions that the defendant lacked prior notice of the conditions underlying the probation revocation [involve a question] of law for which our review is plenary." (Citation omitted; internal quotation marks omitted.) *State* v. *Bruce T.*, 98 Conn. App. 579, 586, 910 A.2d 986 (2006).

## A

The defendant claims that his right to due process was violated because the revocation of probation hearing and the arrest warrant application did not provide sufficient notice of the specific incidents of the alleged violations of probation for failure to report. We do not agree.

The following additional facts are relevant to this issue. The conditions of probation form, signed by the defendant, contained ten standard conditions of probation and several court-ordered special conditions. Standard condition number two required that the defendant, during the period of probation, "[r]eport as the [p]robation [o]fficer directs, give immediate notice if arrested and, if incarcerated, report to the [p]robation [o]fficer upon your release." Standard condition number four, required that the defendant "not leave the [s]tate of Connecticut without permission from the [p]robation [o]fficer."

On May 10, 2005, probation officer Ward attested in a warrant application that the defendant, among other things, "violated standard condition of probation [number two]." Ward also averred, in a prior paragraph of the warrant application, that "on April 14, 2005, this

affiant [Ward] instructed [the defendant] to report on [April 18, 2005] but he respectfully declined stating that he would be traveling out of state on business but that he would report on [April 25, 2005]. At this time, [the defendant] was advised that he did not have permission to travel out of state. On [April 25, 2005], [the defendant] failed to report. As of this writing, [the defendant] has failed to make contact with this affiant."

When considering the defendant's violation of probation, the court specifically found that the defendant "was advised of his conditions of probation on four occasions . . . [and] that the defendant was aware of the . . . standard conditions of probation, which include [the requirements] to report . . . as [the] probation officer directs, and to not violate any law of this state . . . ." The court went on to find that "[t]he testimony of the probation officer . . . indicated that the defendant did not show [up] as the probation officer [had] directed. Specific dates reported are January 29, 2001, April 2, 2002, April 23, 2002, August 4, 2002, and November 12, 2002. The court finds the testimony of the probation officer credible. The fact that the defendant appeared on the other dates does not eliminate the basis of a violation of failure to report." After considering those facts, the court then found that "the defendant did violate the terms and conditions of his probation as it relates to failure to report as the probation officer directs." The court, however, made no specific finding on the record concerning the April 18, 2005 date on which the defendant also failed to report.

The defendant does not contest that he failed to report on those specific dates. Rather, he argues that the court improperly, and in violation of his right to due process, allowed Ward to testify concerning the defendant's failure to report on dates between 2000 and 2002. He argues that he vehemently had objected to this testimony because those missed dates were not

listed in the warrant application. He reasons that because the warrant listed only April 18, 2005, as a specific date, he had no notice that any other dates on which he had failed to report could form the basis for a violation of probation. We are not persuaded.

General Statutes § 53a-32 (a) requires that the "court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . ." The defendant was charged with one count of violation of probation on the basis of violating two standard conditions of probation, violating the criminal laws and failing to report as directed. During the violation of probation hearing, the state sought to introduce evidence of the defendant's failure to report on several occasions. When the defendant objected on the ground that the arrest warrant listed April 18, 2005, as the only specific date on which he had failed to report, the court overruled the objection, explaining that paragraph ten of the warrant application provided "sufficient notice to the defendant that the hearing would involve his reporting as directed [to] the probation officer."

Paragraph eight of the arrest warrant application specifically listed April 18, 2005, as a date on which, among other things, the defendant failed to report as directed. Subsequent to the allegations set forth in paragraph eight, however, paragraph ten, in its entirety alleged: "In addition, this affiant [Ward] feels that [p]robable [c]ause exists to believe that the accused has violated: [s]tandard [c]ondition(s) of [p]robation: [number two, which requires the defendant to] [r]eport as the [p]robation [o]fficer directs, give immediate notice if arrested and, if incarcerated, report to the [p]robation [o]fficer immediately upon your release."

On the basis of the allegations contained in paragraph ten of the arrest warrant application, which put the defendant on notice that his failure to report as directed was one of the bases for the violation of probation charge, and the evidence offered at the hearing concerning the many dates on which the defendant failed to report as directed, we conclude that the defendant had sufficient notice of the manner in which he was alleged to have violated his probation.[3]

## B

The defendant next claims that his right to due process was violated because there was an unreasonable preaccusation delay in charging him with a violation of probation for failing to report as directed several years earlier. He argues that the delay of two and one-half years to five years prejudiced him "because he was unable to properly prepare his defense." We are not persuaded.

The law is quite clear that "[i]n order to establish a due process violation because of pre-accusation delay, the defendant must show both that actual substantial prejudice resulted from the delay and that the reasons for the delay were wholly unjustifiable, as where the state seeks to gain a tactical advantage over the defendant." *State* v. *Morrill*, 197 Conn. 507, 522, 498 A.2d 76 (1985). The record in this case does not demonstrate either of these requirements.

First of all, the defendant does not explain how this delay interfered with his defense preparation. Quite to the contrary, the defendant stated to the court during his allocution that he had no malicious intent in failing to report to his probation officer as directed "on several occasions." In his appellate brief, he also states: "The

[3] We also note that the defendant did not file a request for a bill of particulars.

defendant admits that the alleged incidents occurred." Accordingly, the defendant has never contested that he failed to report as directed either at his violation of probation hearing or on appeal. On the basis of these admissions, we can discern no manner in which this preaccusation delay could have implicated his defense preparation, nor does the defendant explain that to us.

Further, although the defendant argues that "[n]o justification was offered for the delay" by the state, it is the defendant's burden to show that the delay was wholly unjustifiable. This he has not attempted to do. Accordingly, he has failed in his burden of proof.

The judgment is affirmed.

In this opinion the other judges concurred.